UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC MEYER, | | Civ. No. |
| Plaintiff, | | |
| vs. | | **COMPLAINT** |
| LIBERTY MUTUAL INSURANCE COMPANY and STATE AUTO GROUP, d/b/a State Auto Insurance Companies, | | |
| Defendants. | | |

Plaintiff Eric Meyer, above-named, by and through his undersigned counsel, for his claims against Defendants Liberty Mutual Insurance Company and State Auto Group, d/b/a State Auto Insurance Companies, respectfully states as follows:

**PARTIES**

1. Plaintiff Eric Meyer is a citizen of the State of South Dakota and resides in Watertown, Codington County, South Dakota.

2. Defendant Liberty Mutual Insurance Company is, upon information and belief, an insurance company authorized to transact insurance business in South Dakota, with its principal place of business in a state other than South Dakota.

3. Defendant State Auto Group, d/b/a State Auto Insurance Companies is, upon information and belief, an insurance company authorized

to transact insurance business in South Dakota, with its principal place of business in a state other than South Dakota.

4. On or about March 1, 2022, Liberty Mutual Insurance completed its acquisition of State Auto Group, which includes State Auto Insurance Companies.

5. State Auto Insurance Companies is, upon information and belief, a wholly owned subsidiary of State Auto Group.

6. State Auto Group is, upon information and belief, a wholly owned subsidiary of Liberty Mutual Insurance.

7. Upon information and belief, Liberty Mutual acquired, controlled, administered, supervised, directed, or otherwise participated in the handling of workers' compensation claims under the State Auto name, including Plaintiff's claim.

8. At all times material hereto, Defendants acted by and through their agents, employees, representatives, adjusters, claims handlers, attorneys, vendors, nurse case managers, and other persons acting within the course and scope of their authority.

9. At all times material hereto, Defendants provided, insured, adjusted, administered, handled, controlled, supervised, or participated in the handling of workers' compensation benefits owed to Plaintiff arising from his February 21, 2019 work-related injury.

2

## JURISDICTION AND VENUE

10.    The amount in controversy exceeds $75,000, exclusive of interest and costs.

11.    Jurisdiction is based on 28 U.S.C. § 1332, diversity of citizenship.

12.    Venue is proper in the United States District Court for the District of South Dakota, Western Division, because a substantial part of the acts and omissions giving rise to these claims occurred in South Dakota, because Plaintiff resides in South Dakota, and because Defendants transacted insurance business and handled the workers' compensation claim in South Dakota.

## FACTUAL & PROCEDURAL HISTORY

13.    Plaintiff Eric Meyer is the owner of Meyer & Associates, Inc., an insurance agency with offices in Watertown, Webster, and Sioux Falls, South Dakota.

14.    Meyer & Associates regularly sold policies for State Auto Insurance Companies and was insured for workers' compensation purposes by State Auto.

15.    On February 21, 2019, Plaintiff and his employee, Aaron Hansen, traveled from Watertown, South Dakota, to the Rosholt, South Dakota area to meet with a prospective insurance client.

16.    Plaintiff and Hansen conducted work-related business at the prospective client's property.

3

17. After the site visit, Plaintiff and Hansen needed fuel and drove to the nearest gas station, located near Dakota Magic Casino.

18. Plaintiff and Hansen refueled the vehicle and then entered the casino.

19. While inside the casino, Plaintiff and Hansen handled work-related matters, including communications with underwriters, business emails, and sensitive personnel issues.

20. Plaintiff consumed alcohol while at the casino.

21. Because Plaintiff had consumed alcohol, Hansen drove Plaintiff's vehicle when they left the casino.

22. Plaintiff and Hansen left the casino and traveled on Interstate 29 toward Watertown.

23. At approximately 6:36 p.m., while Plaintiff and Hansen were returning from the work trip, their vehicle was rear-ended by a semi-truck and trailer.

24. The collision caused catastrophic injuries to Plaintiff.

25. Plaintiff sustained severe spinal injuries, including cervical injuries, and became permanently tetraplegic/quadriplegic.

26. Plaintiff was transported by ambulance to a hospital in Sisseton, South Dakota, and was then airlifted to Fargo, North Dakota.

27. Plaintiff required surgery, ventilator support, extended hospitalization, and inpatient rehabilitation.

4

28. Plaintiff experienced severe medical complications, including sepsis, infection involving spinal hardware, removal of hardware, prolonged pain, and an extended rehabilitation course.

29. Plaintiff remains severely disabled and dependent on wheelchair mobility, medical equipment, accessible transportation, and assistance with activities of daily living.

30. State Auto initially investigated the claim and sought extensions of time to complete its investigation.

31. On or about April 10, 2019, State Auto advised Plaintiff that it was allowing his claim under a reservation of rights and had begun paying wage loss and medical benefits.

32. Defendants knew from the outset that Plaintiff's injuries were catastrophic.

33. Defendants knew Plaintiff's injury arose during a work trip.

34. Defendants knew Plaintiff was a State Auto insurance agent and agency owner whose work customarily required travel, client visits, field underwriting communications, and business activities away from the office.

35. Defendants knew or should have known that Plaintiff required timely medical care, durable medical equipment, nursing care, wheelchair maintenance, accessible transportation, and coordinated claims handling.

36. Despite paying benefits, Defendants failed to handle Plaintiff's claim in good faith.

37.   Defendants delayed, denied, restricted, or failed to timely authorize medically necessary care, equipment, and services.

38.   Plaintiff repeatedly sought out-of-state treatment and rehabilitation services through Craig Hospital in Denver, Colorado.

39.   Defendants resisted or delayed authorizing treatment, evaluation, and services through Craig Hospital despite Plaintiff's catastrophic spinal cord injury and need for specialized care.

40.   Defendants capped Plaintiff's home-health nursing care at approximately 56 hours per week.

41.   Defendants knew Plaintiff required more than 56 hours per week of care.

42.   Defendants knew Plaintiff's wife was not providing full-time care and that Plaintiff could not safely be left alone for extended periods.

43.   Defendants knew Plaintiff required assistance with bowel care, catheter care, transfers, skin protection, medications, mobility, and basic activities of daily living.

44.   Defendants nevertheless imposed rigid limits on care and forced Plaintiff to pay out-of-pocket for necessary nursing services.

45.   Plaintiff incurred substantial out-of-pocket expenses for nursing care because Defendants failed to timely and reasonably provide necessary home-health benefits.

46.   Plaintiff used Freestar for nursing care.

47.   Freestar had difficulty obtaining timely payment from Defendants.

6

48.    Defendants knew or should have known Freestar was having payment problems and might discontinue services.

49.    Defendants failed to timely warn Plaintiff that Freestar would stop providing care.

50.    Defendants waited until the day services ended, or near that time, to advise Plaintiff that they had no provider available to assume his care.

51.    Plaintiff was then forced to arrange emergency substitute care.

52.    Plaintiff's sister formed a care company and hired nurses because no other provider would accept the claim under Defendants' handling.

53.    Defendants refused or failed to timely reimburse Plaintiff and his family for necessary care provided through that substitute arrangement.

54.    Defendants also contacted or caused contact with the State of South Dakota regarding the family-created care company, in an apparent attempt to challenge, intimidate, obstruct, or interfere with the care arrangement Plaintiff was forced to create because of Defendants' own failures.

55.    Defendants also failed to provide reasonable nurse case management and care coordination.

56.    Paradigm, a nurse case management entity involved in Plaintiff's care, ceased involvement.

57.    Plaintiff repeatedly requested a nurse case manager or comparable care coordination.

58.    Defendants failed to provide adequate continuing care coordination despite knowing Plaintiff's injury required ongoing coordination between

7

doctors, therapists, equipment providers, home-care providers, pharmacies, and vendors.

59.    Defendants also delayed or refused wheelchair repairs and replacement.

60.    Plaintiff's wheelchairs were essential medical equipment.

61.    Defendants knew Plaintiff could not ambulate and depended on safe and functioning wheelchairs.

62.    Defendants knew unsafe wheelchairs created a serious risk of falls, fractures, pressure injuries, skin breakdown, loss of independence, hospitalization, and further harm.

63.    Plaintiff repeatedly notified Defendants that his wheelchair needed repairs, parts, tires, seatbelts, and maintenance.

64.    Plaintiff sent repeated written requests and urgent emails to Defendants seeking wheelchair repairs, replacement parts, and authorization.

65.    Many of Plaintiff's requests were ignored, unanswered, delayed, or mishandled.

66.    Plaintiff was forced to obtain wheelchair repairs through a welding shop because Defendants failed to arrange ordinary wheelchair service.

67.    Plaintiff sent video evidence showing the poor condition of his wheelchair and the lack of proper repair.

68.    Defendants failed to timely provide proper seatbelts for Plaintiff's wheelchairs.

69.    Plaintiff repeatedly requested seatbelts.

70.    Defendants failed to timely provide and install the necessary seatbelts on the proper wheelchair.

71.    In 2023, while using a manual wheelchair without the required seatbelt, Plaintiff fell from his wheelchair during therapy or mobility activity.

72.    The fall caused Plaintiff to suffer additional injuries, including fractures involving his femur, kneecap, and tibia.

73.    Defendants provided a seatbelt after Plaintiff's fall and fractures.

74.    Defendants' delay and failure to provide necessary wheelchair equipment caused or contributed to Plaintiff's additional injuries.

75.    Defendants also delayed replacement of Plaintiff's wheelchair.

76.    Plaintiff was beyond the expected useful life of his chair and requested replacement.

77.    Defendants delayed or ignored replacement requests.

78.    When Defendants finally authorized a replacement chair, they allowed the fitting to occur by telehealth and measurement rather than through appropriate in-person evaluation by qualified spinal cord rehabilitation professionals.

79.    The replacement wheelchair was improperly fitted.

80.    Plaintiff became physically ill when using the improperly fitted wheelchair.

81.    Plaintiff reported the problem to Defendants.

82.    Defendants failed to reasonably respond.

83.    Plaintiff paid out-of-pocket to return to Craig Hospital for evaluation and documentation showing the replacement chair was inadequate.

84.    Only after Plaintiff incurred expense and forced the issue did Defendants authorize further steps to obtain an appropriate chair.

85.    Defendants also failed to timely pay or reimburse expenses related to medical treatment, travel, lodging, accessible transportation, wheelchair repairs, van modifications, home-health care, and other medically necessary services and equipment.

86.    Plaintiff has incurred hundreds of thousands of dollars in out-of-pocket expenses because Defendants failed to timely and reasonably pay benefits owed under South Dakota workers' compensation law.

87.    Plaintiff has also been underpaid indemnity benefits.

88.    Plaintiff has an 84% whole-person impairment rating.

89.    Plaintiff is paralyzed from the chest down and is a permanent total disability claimant under South Dakota workers' compensation law.

90.    Defendants nevertheless failed and refused to timely recognize and pay Plaintiff as permanently totally disabled.

91.    Defendants paid Plaintiff partial disability benefits rather than permanent total disability benefits.

92.    Defendants failed to timely pay cost-of-living adjustments owed under South Dakota workers' compensation law.

10

93. Defendants knew or should have known that Plaintiff's paralysis, functional limitations, need for wheelchair mobility, dependence on care, and medical condition supported permanent total disability benefits.

94. Defendants nonetheless delayed, disputed, resisted, or refused to pay full benefits owed.

95. On November 12, 2019, State Auto filed a Petition for Hearing before the South Dakota Department of Labor and Regulation.

96. In that Petition, State Auto alleged Plaintiff's injury was not compensable under South Dakota workers' compensation law.

97. State Auto alleged it was not responsible for Plaintiff's past, present, or future workers' compensation benefits.

98. State Auto further sought to recover all benefits paid to Plaintiff.

99. After years of litigation, the issue presented to the Department was whether Plaintiff was in the course of his employment at the time of his injury on February 21, 2019.

100. Administrative Law Judge Michelle M. Faw heard the matter on March 6, 2024.

101. On October 24, 2024, ALJ Faw issued a Decision finding that Plaintiff was in the course of his employment at the time of his injury.

102. ALJ Faw found that Plaintiff and Hansen were returning from a work trip when the crash occurred.

103. ALJ Faw found that Plaintiff and Hansen were on the shortest and most direct route between the client's property and the Watertown office.

104. ALJ Faw concluded that Plaintiff had proven by a preponderance of the evidence that he was in the course of employment at the time of the injury.

105. ALJ Faw concluded that Plaintiff's injury was compensable.

106. State Auto appealed the Department's decision to the Sixth Judicial Circuit Court, Hughes County, South Dakota.

107. On August 8, 2025, Circuit Court Judge Margo D. Northrup issued a Memorandum Opinion affirming the Department's decision.

108. Judge Northrup affirmed that Plaintiff suffered a compensable injury under South Dakota workers' compensation law.

109. Judge Northrup rejected State Auto's arguments that the Department erred in considering Plaintiff's testimony, discounting expert testimony, determining Plaintiff was an outside employee, and determining Plaintiff was in the course and scope of employment.

110. Judge Northrup held that the Department did not err in finding that Plaintiff was an outside employee.

111. Judge Northrup held that Plaintiff's travel to and from the gas station and casino was related to his work.

112. Judge Northrup held that Plaintiff's injury occurred while he was on the direct route from the on-site review to his office in Watertown.

113. Judge Northrup affirmed that Plaintiff was within the scope of his employment at the time of the accident.

12

114. Despite the Department's decision and the circuit court's affirmance, Defendants have continued to delay, dispute, underpay, or refuse benefits owed to Plaintiff.

115. Defendants have also sought broad disclosure of filings and communications involving a separate fee dispute between Plaintiff and his former counsel.

116. Defendants' attempt to obtain those materials was improper, unnecessary, invasive, and intended to gain leverage over Plaintiff rather than fairly evaluate and pay workers' compensation benefits.

117. Defendants' handling of Plaintiff's claim placed their own financial interests above Plaintiff's safety, medical needs, and statutory rights.

118. Defendants failed to give equal consideration to Plaintiff's interests.

119. Defendants failed to conduct a fair, prompt, and reasonable investigation of benefits owed.

120. Defendants ignored facts supporting Plaintiff's claim.

121. Defendants relied on disputed or immaterial facts to delay, deny, restrict, or underpay benefits.

122. Defendants failed to timely authorize and pay benefits that were not fairly debatable.

123. Defendants failed to comply with South Dakota law requiring workers' compensation benefits to be promptly provided.

124. Defendants' conduct was knowing, intentional, reckless, oppressive, malicious, and in conscious disregard of Plaintiff's rights.

13

125.  Defendants' conduct caused Plaintiff financial loss, physical injury, loss of independence, loss of mobility, humiliation, anxiety, fear, frustration, emotional distress, inconvenience, and additional medical harm.

## COUNT I: BAD FAITH AND UNFAIR AND DECEPTIVE PRACTICES

126.  Plaintiff hereby reincorporates by reference all preceding paragraphs as though fully set forth herein.

127.  Defendants owed Plaintiff a duty of good faith and fair dealing in the handling, adjustment, administration, payment, and supervision of his workers' compensation claim.

128.  With actual knowledge of Plaintiff's catastrophic and compensable injuries, Defendants knowingly and without reasonable basis failed to conduct a prompt, fair, and adequate investigation and evaluation of all benefits owed.

129.  Defendants knowingly and without reasonable basis delayed, denied, restricted, or underpaid workers' compensation benefits owed to Plaintiff.

130.  Defendants knew or recklessly disregarded the lack of a reasonable basis for their claim-handling conduct.

131.  Defendants acted for the purpose of discouraging, avoiding, delaying, or reducing payment of benefits owed to Plaintiff.

132.  Defendants failed to give equal consideration to Plaintiff's interests.

133.  Defendants' bad-faith conduct included, but was not limited to:

   a.    contesting compensability despite facts showing Plaintiff was injured while returning from a work trip;

14

b. seeking reimbursement of benefits already paid despite knowing Plaintiff suffered a catastrophic work-related injury;

c. delaying recognition of permanent total disability benefits despite Plaintiff's paralysis and functional limitations;

d. underpaying indemnity benefits and failing to timely pay cost-of-living adjustments;

e. delaying, denying, or refusing medically necessary out-of-state treatment and specialized spinal cord rehabilitation;

f. capping home-health care at an unreasonable level despite Plaintiff's known medical needs;

g. failing to ensure continuity of home-health care when providers stopped providing services;

h. refusing or delaying reimbursement for necessary nursing care arranged by Plaintiff and his family;

i. failing to provide reasonable nurse case management and care coordination;

j. ignoring, delaying, or mishandling repeated written requests for wheelchair repairs, parts, seatbelts, and replacement equipment;

k. failing to timely provide proper seatbelts, resulting in additional injury to Plaintiff;

l. forcing Plaintiff to use a welding shop to repair essential wheelchair equipment;

15

m.   allowing an inadequate telehealth wheelchair fitting rather than appropriate in-person evaluation by specialized providers;

n.   failing to reasonably respond when Plaintiff reported that the new wheelchair was improperly fitted and made him physically ill;

o.   forcing Plaintiff to pay out-of-pocket for evaluation, treatment, equipment, care, travel, lodging, and services that Defendants were obligated to provide;

p.   ignoring or failing to respond to hundreds of written requests from Plaintiff;

q.   using the litigation process and requests for privileged or confidential materials to gain leverage rather than to fairly resolve benefits owed; and

r.   placing Defendants' financial interests above Plaintiff's health, safety, dignity, and statutory rights.

134.   Defendants' conduct violated the covenant of good faith and fair dealing.

135.   As a legal result of Defendants' conduct, Plaintiff suffered financial loss, physical injury, loss of mobility, loss of independence, emotional distress, anxiety, humiliation, inconvenience, and other damages.

136.   Plaintiff is entitled to recover all damages allowed by law for Defendants' bad faith.

16

## COUNT II: CIVIL CONSPIRACY

137.  Plaintiff hereby reincorporates by reference all preceding paragraphs as though fully set forth herein.

138.  Defendants, by and through their respective agents, employees, representatives, adjusters, claims handlers, attorneys, vendors, and related entities, conspired and acted in concert to delay, deny, restrict, underpay, and avoid workers' compensation benefits owed to Plaintiff.

139.  Defendants had a meeting of the minds to use litigation, delay, benefit restrictions, inadequate care coordination, and claim-handling tactics to avoid or reduce payment of benefits owed to Plaintiff.

140.  Defendants acted with knowledge that they lacked a reasonable basis to delay, restrict, underpay, or deny benefits.

141.  Defendants' acts in furtherance of the conspiracy included, but were not limited to, contesting compensability, seeking reimbursement of benefits already paid, delaying permanent total disability benefits, delaying medical and equipment benefits, restricting home-health care, failing to provide care coordination, and attempting to obtain confidential or privileged materials involving Plaintiff's dispute with former counsel.

142.  Defendants' conduct was willful, malicious, oppressive, and in conscious disregard of Plaintiff's rights.

143.  As a legal result of Defendants' civil conspiracy, Plaintiff suffered financial loss, physical injury, loss of mobility, loss of independence, emotional distress, anxiety, humiliation, inconvenience, and other damages.

17

144. Plaintiff is entitled to recover all damages allowed by law for Defendants' civil conspiracy.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

145. Plaintiff hereby reincorporates by reference all preceding paragraphs as though fully set forth herein.

146. Defendants knew, or in the exercise of reasonable care should have known, that Plaintiff was catastrophically injured, paralyzed, medically fragile, dependent on wheelchairs, dependent on home-health care, and vulnerable to serious harm if benefits were delayed, restricted, or denied.

147. Defendants knew, or should have known, that delaying, denying, restricting, or mishandling medical care, home-health care, wheelchair repairs, wheelchair replacement, nurse case management, and indemnity benefits would cause Plaintiff severe emotional distress.

148. Defendants' conduct was extreme and outrageous.

149. Defendants acted intentionally, recklessly, and with deliberate disregard of the high probability that Plaintiff would suffer severe emotional distress.

150. Defendants' conduct caused Plaintiff to suffer severe emotional distress, anxiety, fear, humiliation, frustration, loss of dignity, and loss of independence.

151. As a legal result of Defendants' intentional infliction of emotional distress, Plaintiff suffered damages.

152. Plaintiff is entitled to recover all damages allowed by law.

## COUNT IV: CONVERSION

153.   Plaintiff hereby reincorporates by reference all preceding paragraphs as though fully set forth herein.

154.   At all times relevant herein, Plaintiff possessed a legal right to workers' compensation benefits payable under South Dakota law, including but not limited to permanent total disability benefits, statutory cost-of-living adjustments, payment and reimbursement of medical expenses, nursing-care expenses, travel expenses, rehabilitation expenses, wheelchair and durable medical equipment expenses, and other compensable workers' compensation benefits.

155.   Defendants received premiums, assumed responsibility for the administration of Plaintiff's workers' compensation claim, and exercised exclusive control over the payment and distribution of workers' compensation benefits owed to Plaintiff.

156.   Defendants knew that certain benefits had accrued, become due, and were payable to Plaintiff.

157.   Defendants further knew that Plaintiff had incurred substantial medical expenses, nursing-care expenses, travel expenses, equipment expenses, and other compensable costs that were required to be paid or reimbursed under South Dakota workers' compensation law.

158.   Despite this knowledge, Defendants intentionally withheld, delayed, retained, diverted, refused to pay, or otherwise exercised dominion and control over benefits and funds belonging to Plaintiff.

19

159. Defendants wrongfully failed to pay cost-of-living adjustments owed to Plaintiff.

160. Defendants wrongfully failed to pay permanent total disability benefits owed to Plaintiff.

161. Defendants wrongfully failed to timely pay or reimburse medical expenses, nursing-care expenses, travel expenses, wheelchair expenses, durable medical equipment expenses, and other compensable workers' compensation benefits owed to Plaintiff.

162. Defendants retained and exercised control over monies that should have been paid to Plaintiff or paid for Plaintiff's benefit.

163. Defendants' retention and control of these accrued and payable benefits was inconsistent with and in derogation of Plaintiff's ownership, possessory, and statutory rights in those funds.

164. Plaintiff demanded payment of workers' compensation benefits, reimbursements, cost-of-living adjustments, and other amounts due and owing.

165. Defendants failed and refused to fully remit such amounts.

166. Defendants thereby converted workers' compensation benefits and funds rightfully belonging to Plaintiff.

167. As a direct and proximate result of Defendants' conversion, Plaintiff suffered financial losses, loss of use of funds, out-of-pocket expenses, additional indebtedness, delay damages, consequential damages, and other losses in an amount to be determined at trial.

20

168.   Defendants' conduct was intentional, willful, malicious, oppressive, and undertaken in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages pursuant to SDCL § 21-3-2.

## COUNT IV: PUNITIVE DAMAGES

169.   Plaintiff hereby reincorporates by reference all preceding paragraphs as though fully set forth herein.

170.   Defendants acted with oppression, fraud, malice, and reckless disregard for Plaintiff's rights.

171.   Defendants acted with actual or presumed malice by intentionally delaying, denying, restricting, underpaying, and refusing workers' compensation benefits owed to Plaintiff.

172.   Defendants acted with conscious disregard for Plaintiff's health, safety, dignity, statutory rights, and financial security.

173.   Defendants' conduct was not isolated.

174.   Defendants engaged in a pattern and practice of delaying, denying, restricting, underpaying, or refusing workers' compensation benefits without a reasonable basis.

175.   Defendants' conduct warrants punitive damages pursuant to SDCL § 21-3-2 in an amount sufficient to punish Defendants and deter similar conduct in the future.

WHEREFORE, Plaintiff Eric Meyer prays for judgment against Defendants as follows:

21

a.   For all compensatory, general, special, consequential, and extra-contractual damages in an amount to be determined at trial;

b.   For damages for financial loss, out-of-pocket expenses, loss of mobility, loss of independence, physical injury, emotional distress, humiliation, anxiety, inconvenience, and other harms;

c.   For punitive damages in an amount to be determined by the jury;

d.   For prejudgment and post-judgment interest as allowed by law;

e.   For attorney's fees, costs, disbursements, and expenses as allowed by law; and

f.   For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the provisions of Federal Rule of Civil Procedure 38, Plaintiff Eric Meyer hereby demands a trial by jury on all issues so triable as of right.

Dated this __8th__ day of June, 2026.

BEARDSLEY, JENSEN & LEE,
Prof. L.L.C.

By: _____
Brad J. Lee
blee@blackhillslaw.com
Michael S. Beardsley
mbeardsley@blackhillslaw.com
4200 Beach Drive, Suite 3
P.O. Box 9579
Rapid City, SD  57709
Telephone:  (605) 721-2800
Facsimile:  (605) 721-2801
*Attorneys for Plaintiff*

22

JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ERIC MEYER

**(b)** County of Residence of First Listed Plaintiff   <u>Codington</u>
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
BEARDSLEY JENSEN & LEE
PO BOX 9579
RAPID CITY, SD 57709

## DEFENDANTS

LIBERTY MUTUAL INSURANCE COMPANY and STATE AUTO GROUP, d/b/a State Auto Insurance Companies

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: <u>Nature of Suit Code Descriptions</u>.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | |
|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. SECTION 1332

Brief description of cause:
BREACH OF CONTRACT, BAD FAITH

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   6·8·2026

SIGNATURE OF ATTORNEY OF RECORD
/s/ BRAD J. LEE

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____